```
                IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF ARKANSAS
                         HOT SPRINGS DIVISION


SAMUEL HUGHES AND AMANDA HUGHES,
Individually, and as parents of
_____, a minor                                      PLAINTIFFS


        V.              CASE No. 11-6025


BENTLEY INDUSTRIES, LLC, et al                         DEFENDANTS
```

### MEMORANDUM OPINION & ORDER

Before the Court are Separate Defendant Marine East, Inc. d/b/a MarineEast.com's ("Marine East" Motion for Summary Judgment and supporting documents (docs. 49-51), Plaintiffs' Response and supporting documents (doc. 54) and Marine East's Reply (doc. 55). For the reasons reflected below, the motion (doc. 49) is **GRANTED**, and Plaintiffs' claims against Marine East are **DISMISSED WITH PREJUDICE.**

**A. Standard of Review**

Summary Judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574 (1986). Once the moving party has met its burden, defeating summary judgment requires "sufficient evidence favoring the non-

moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**B. Background & Facts**

This litigation arises from an injury sustained by Plaintiffs' minor son while jumping off a pontoon boat on July 5, 2010. The minor's pinkie finger was caught in the hinge area of the boat's gate resulting in the loss of his finger. Plaintiffs allege the injury was a result of a defective and dangerous "pinch guard" in the hinge area of the gate. For purposes of summary judgment, the Court views the evidence and recites the facts in the light most favorably to the non-moving party. The following facts are undisputed, except where noted.

1. Plaintiffs Samuel and Amanda Hughes live in Tennessee with their minor child. On July 5, 2010, the minor child was injured as he jumped from his grandfather, Lloyd Mcleod's, pontoon boat on Sardis Lake in Mississippi. Plaintiffs allege that the minor child's hand was stuck in the gate hinges of the pontoon boat, severing his pinky finger.

2. Plaintiffs allege that Marine East designed, manufactured, and sold a finger pinch guard that was on the gate near the hinge and that such hinge caused the injury.

3. The finger pinch guard at issue, however, was designed, manufactured, and sold prior to Marine East's existence.

>> The relationship between Marine East and finger pinch guards manufactured and sold prior to December 19, 2007, has been investigated through discovery in prior litigation which revealed many of the following facts.

4. According to Marine East, David Thompson was the sole owner and stockholder of Separate Defendants, Mariner Sail & Power Yachts, Inc. ("Mariner Sail") and Marine Tool, Inc. ("Marine Tool") and these companies were physically located in Brick, New Jersey with warehouses in Florida, New Jersey, and Bourbon, Indiana.

5. According to Marine East, Mr. Thompson obtained a patent for the finger pinch guard he designed to prevent fingers from catching in the hinges of pontoon boat gates.

6. Separate Defendants Bentley Industries, LLC d/b/a Bentley Pontoons and Bentley Marine Group, LLC d/b/a Bentley Pontoons ("Bentley", collectively) purchased finger pinch guards from Marine Tool and Mariner Sail and installed them on their pontoon boats.

7. On August 30, 2006, Bentley sold a pontoon boat to a retailer, Separate Defendant Power Boats, Inc., in Hot Springs, Arkansas. On August 4, 2007, Power Boats sold the boat to Lloyd McLeod.

Plaintiffs deny all of the following facts asserted by Marine East stating they have no prior knowledge of such testimony, have not been provided a full transcript of the cited depositions, and

AO72A
(Rev. 8/82)

have not been afforded the opportunity to conduct further discovery from the named witnesses. The facts asserted by Marine East were revealed in discovery in another lawsuit. The Court notes that Plaintiffs filed their response on December 14, 2012 and have made no attempt to supplement their response throughout the discovery process.

8. On December 19, 2007, David Thompson, on behalf of Mariner Sail and Marine Tool, entered into an agreement called "Agreement of Purchase of Certain Assets" with Marine East.

9. Paragraph 3 of the agreement states as follows:

> Buyer agrees to assume the specific liabilities as described in Exhibit "C", attached hereto, described as trade payables, accruals and taxes. Seller represents and warrants that the liabilities described in Exhibit C represent the complete and accurate list of liabilities that exist as of the last financial statement of Seller dated the 31st day of December, 2006. There has been no material change in the liabilities of Seller outside of the ordinary course of business.

10. According to Ken Coates, the buyer and owner of Marine East, no Exhibit "C" ever became part of the contract. The Seller, David Thompson, testified he did not know where the Exhibit "C" was or if it ever existed and did not have a copy of it.

11. Marine East was incorporated on September 27, 2007, in Indiana, where it is located. Ken Coates is the sole owner, officer and director of Marine East.

12. Subsequent to the asset purchase, Marine East did not

      retain any of Marine Tool or Mariner Sail's employees or warehouses. Marine East moved all of the inventory to Laporte, Indiana.

13. Mr. Thompson retained no ownership after selling Marine Tool and Mariner Sail's assets to Marine East.

14. Mariner Sail and Marine Tool had no officers, directors, owners, managers or shareholders in common with Marine East, and Marine East uses different computer software than that used by Mariner Sail and Marine Tool. Subsequent to the asset purchase by Marine East, Mariner Sail and Marine Tool were dissolved in New Jersey on February 7, 2011.

15. Marine East sells many of the same products previously sold by Mariner Sail and Marine Tool, however, Marine East has developed approximately one hundred (100) new products since its inception. Marine East paid Mariner Sail and Marine Tool for the right to utilize their d/b/a name and used the "MarineEast.com" website and logo as provided for in the agreement. Marine East also utilized Mr. Thompson as an adviser/consultant.

Plaintiff admits the following facts.

16. Marine East did not design, manufacture, or sell the finger pinch guard that allegedly injured Plaintiffs as the finger pinch guard was purchased by Bentley prior to Marine East's existence and before Marine East purchased

AO72A
(Rev. 8/82)

>     the assets of Marine Tool and Mariner Sail on December 19, 2007.
>
> 17. The United States District Court for the District of South Carolina has previously held that Marine East is not liable for damages caused by finger pinch guards sold prior to the asset purchase. *See Grady v. Deese*, No. 3:11-cv-232-CMC, 2012 U.S. Dist. LEXIS 46059 (D.S.C. April 2, 2012); *Knott v. Deese*, No. 3:11-cv-158-CMC, 2012 U.S. Dist. LEXIS 46077 (D.S.C. April 2, 2012).

### C. Discussion

#### 1. Successor Liability

Marine East contends it did not design, manufacture, or sell the finger pinch guard at issue in this case and that it was manufactured and sold prior to Marine East's existence. Marine East contends Plaintiffs have not pled any theory of successor liability, however, addresses it in an abundance of caution. In their responsive brief, Plaintiffs admit they do not state a cause of action for successor liability, yet contend that a genuine material fact issue exists.

There are four exceptions to the general rule that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation. *Ford Motor Co. v. Nuckolls*, 894 S.W.2d 897 (Ark. 1995). The four exceptions are: (1) where the transferee assumes the debts and obligations of the transferor by express or implied agreement; (2)

where there is a consolidation or merger of the two corporations; (3) where the transaction is fraudulent or lacking in good faith; and (4) where the purchasing corporation is a mere continuation of the selling corporation. *Id.* at 903 *citing Swayze v. A.O. Smith Corp.*, 694 F.Supp. 619, 622 (E.D. Ark. 1988).

Plaintiffs contend there is a genuine issue of material fact as to whether or not Marine East expressly or impliedly assumed the liabilities of Mariner Sail and whether Marine East is a mere continuation of Mariner Sail.

According to Plaintiffs when an acquisition or transfer agreement is drafted without language clearly assigning liability for product liability claims, courts generally hold the purchaser accepted such claims. Restatement (Third) Property: Prods. Liab. §12.  However, the agreement clearly states that the specific liabilities Marine East would assume were "trade payables, accruals, and taxes."

Paragraph 3 of the asset purchase agreement between Marine East and Mariner Sail and Marine Tool states:

> BUYER agrees to assume the specific liabilities as described in Exhibit "C" attached hereto, described as trade payables, accruals, and taxes. SELLER represents and warrants that the liabilities described in Exhibit "C" represent the complete and accurate list of liabilities that exist as of the last financial statement of SELLER dated the 31st day of December, 2006.  There has been no material change in the liabilities of SELLER outside the ordinary course of business.

No Exhibit "C" was ever created or attached, apparently. However, it is clear that any liabilities that Marine East was to assume

Page 7 of  9

were "trade payables, accruals, and taxes".

There is no genuine issue of material fact as to whether Marine East either expressly or impliedly agreed to assume liability for any torts committed by Mariner Sail or Marine Tool.

As for their argument that Marine East is a mere continuation of Mariner Sail, Plaintiffs point out that Marine East retained the previous owner as a consultant, sells and produces the same products, operates from the same website, and uses the same trademark and name of Marine East. The majority of courts considering the "mere continuation" exception emphasize a common identity of officers, directors, and stock between the selling and purchasing corporations. *Campbell v. Davol, Inc.*, 620 F.3d 887, 892 (applying Arkansas law and quoting Swayze, 694 F.Supp. at 622-23).

Plaintiffs contend that Marine East retained David Thompson as a consultant, sells the same products and uses the same website and trademark. These facts are insufficient to establish that Marine East is a mere continuation of Mariner Sail and Marine Tool. *See Swayze*, 694 F.Supp. at 623-24 (E.D. Ark. 1988)(rejecting the argument that use of the same logo and sale of the same products creates an issue of fact as to successor liability).

Accordingly, even if Plaintiffs had properly pleaded a successor liability claim (which they admit they did not), such claim fails. Marine East is entitled to summary judgment on the issue of successor liability.

**2. Duty to Warn**

Plaintiffs contend Marine East is not entitled to summary judgment on their failure to warn claim as Marine East was aware of potential harms at the time the Asset Purchase Agreement was executed between Marine East and Mariner Sail and Marine Tool.

However, Plaintiffs admit that Marine East did not sell the pinch guard at issue, therefore, it had nothing to do with any warnings accompanying it.  Further, Arkansas law does not recognize a post-sale failure to warn claim.  *See Campbell*, 620 F.3d at 894. Plaintiffs have provided no evidence that Marine East had a legal duty to warn of defects for products sold prior to its existence or of any contractual relationship between Marine East and previous customers of Mariner Sail and Marine Tool.  Accordingly, Marine East is entitled to summary judgment on the failure to warn claim.

**D. Conclusion**

Based on the above, Marine East's Motion for Summary Judgment (doc. 49) is **GRANTED**.  Plaintiffs' claims against Separate Defendant Marine East are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 25th day of September, 2013.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge